UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM SATINK, | : | Case No. 04CV2019 |
| | : | |
| Plaintiff, | : | JUDGE KATHLEEN O'MALLEY |
| | : | |
| v. | : | |
| | : | |
| JAMES P. HOFFA, | : | |
| | : | |
| and | : | |
| | : | MEMORANDUM AND ORDER |
| GREG NOWAK, | : | |
| | : | |
| and | : | |
| | : | |
| INTERNATIONAL BROTHERHOOD | : | |
| OF TEAMSTERS | : | |
| | : | |
| Defendants. | : | |

On October 6, 2004, Plaintiff William Satink, a member and former officer of Teamsters Local Union No. 293 ("Local 293"), filed a motion for a Temporary Restraining Order ("TRO") challenging a decision by James P. Hoffa ("Hoffa"), the General President of the International Brotherhood of Teamsters ("IBT"), imposing an emergency trusteeship over the affairs of Local 293 pursuant to provisions of the Labor Management Reporting & Disclosure Act ("LMRDA") and the IBT Constitution.  In his request for a TRO, Plaintiff asked this Court to order that the emergency trustee,

Greg Nowak ("Nowak"), be removed, that the trusteeship be dissolved, and that the IBT be enjoined from continuing to supervise the affairs of Local 293 through the trusteeship process.  Plaintiff further moved for an order reinstating all employees and officers of Local 293 with full back pay, seniority, and benefits; returning all monies, books and records, keys, credit cards and other property of Local 293 to its elected officers; and ordering that the nomination and election of officers of Local 293 be permitted to go forward.

On October 18, 2004, this Court held the first of three evidentiary hearings in this matter.  During the first hearing, the Court was presented with voluminous documents, testimony from witnesses, transcripts from all deposed witnesses, and listened to oral arguments from both parties. Due to the amount of information presented by both sides, the Court continued the hearing on November 5, 2004. After the presentation of additional evidence in the second hearing, and a subsequent affidavit from Nowak, both parties rested.

On November 9, 2004, this Court entered a Temporary Restraining Order against the IBT, Hoffa, and Nowak (collectively the "Defendants") dissolving the emergency trusteeship and further enjoining the Defendants from supervising the affairs of Local 293 through the trusteeship process.[1]  A preliminary injunction hearing was then set for November 29, 2004.

In the time between the November 5, 2004 and the November 29, 2004 hearings,  Defendants

---

[1] On October 12, 2004, a post-notice hearing was held by a three member panel to determine whether the imposition of the emergency trusteeship over Local 293 should be continued.  On November 4, 2004, the panel submitted a report and recommendation to Hoffa recommending that he continue the trusteeship over the affairs of Local 293.  On November 8, 2004, this Court informed both parties that it was going to grant Plaintiff's motion for a TRO and that they could expect a brief order confirming that fact to follow.  Later that same day, Hoffa adopted the panel's report and recommendation. Accordingly, at the time the Court issued the TRO, it was unaware that Hoffa had adopted the panel's report and recommendation to continue the trusteeship over Local 293 and had not been provided notice or a copy of the panel's recommendations.

2

submitted a Motion to Dismiss or for Summary Judgment, a Motion to Stay the TRO, and a Motion for Modification or Amendment of the same TRO.  On November 28, 2004, Plaintiff submitted a sixty one (61) page Motion for Partial Summary Judgment and Memorandum in Opposition to Defendants' Motion to Dismiss or for Summary Judgment.  On November 29, this Court held a preliminary injunction hearing at which both sides presented oral arguments regarding all of these motions.  After the presentation of oral arguments, the Court heard additional evidence regarding the fairness of the post-notice hearing.[2]  The Court then granted the Defendants' request to respond in writing to Plaintiff's Cross Motion for Summary Judgment and Memorandum in Opposition to Defendants' Motion to Dismiss or for Summary Judgment.  The Court informed the parties that it would wait to issue any further order until the briefing on these matters was completed.

For the reasons stated below, Defendants' Motion to Dismiss, or alternatively, for Summary Judgment is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment is **DENIED**.  Because the granting of Defendants' Motion terminates the injunction previously entered by this Court, Defendants' Motion to Stay the TRO and Motion for Modification or Amendment of the same TRO are **DENIED** as moot.  Accordingly, this action is **DISMISSED**.

## I. FACTUAL BACKGROUND

Local 293 is a labor organization as defined in 29 U.S.C. § 152 (5), with its offices in Independence, Ohio.  The IBT is the parent organization of Local 293 and other local unions around the

---

[2] Because Hoffa decided to continue the trusteeship over Local 293, the emergency trusteeship over Local 293 was terminated.  Plaintiff's motion for a TRO, however, was not limited to the emergency trusteeship, but rather to the trusteeship process as a whole.  While the Court's entry of the TRO was premised primarily on the Court's belief that there was no good faith basis upon which to impose a trusteeship on an emergency basis (*i.e.*, without notice and an opportunity to be heard before the imposition of the trusteeship), the TRO did enjoin the Defendants "from continuing to supervise the affairs of Local 293 through the trusteeship process, pending further order of this Court."

United States and Canada, with its headquarters in Washington, D.C. The affairs of the IBT and all of its subordinate bodies, including local unions such as Local 293, are governed by the IBT Constitution.

On June 29, 2004, Hoffa appointed IBT International Representative Nowak to serve as his "Personal Representative" to investigate and review various aspects of the operations of Local 293. Nowak interviewed the officers of Local 293 as a group and individually, and also reviewed a variety of financial and other documents provided by Local 293. An auditor employed by the IBT also accompanied Nowak to Local 293 on September 13, 2004. Four days later, on September 17, 2004, Nowak submitted a seven page written report to Hoffa outlining various concerns about the operations at Local 293 and attaching a number of documents.

Based on this report, Hoffa decided to place Local 293 in Trusteeship and appointed a temporary trustee. The notice to Local 293's officers and members dated September 20, 2004 read as follows:

> Based upon credible evidence presented by Teamsters members, it appears that the officers of Local 293 have deliberately and purposefully aided a struck employer to break the strike of Teamsters Local 348; the officers of Local 293 have blatantly violated core trade union principles and the International Constitution; they have jeopardized the interests of the International Union, as well as that of Local 348 and its members; democratic procedures within Local 293 are being violated; the officers and representative of Local 293 are failing to assure the performance of collective bargaining agreements and are derelict in their duties as bargaining representative for the membership of Local 293; the officers of Local 293 are engaged in actions which are disruptive of and interfere with the performance of obligations and duties as a bargaining representative of other Local Unions; certain financial malpractice has yet to be corrected by the officers of Local 293; and the Local Union has not been run in compliance with the IBT Constitution , all to the detriment of the membership of Local 293.

Def. Ex. B.

4

The notice cited the alleged ongoing financial improprieties, the decision to enter into an allegedly substandard agreement with a local employer and the failure to submit that agreement to the IBT for appropriate approval, and the fact that certain members of Local 293 failed to support a picket line by members of a sister local, Local 348, against the same employer.  The notice appointed Nowak as Temporary Trustee pursuant to Article VI, Section 5 of the IBT Constitution.  It also stated that "the members of Local 293 will soon be receiving a notice of hearing to determine whether the Temporary Trusteeship should be continued or dissolved.  Separate notice of that hearing shall be posted in the near future by the Temporary Trustee."  *Id.*  On September 28, 2004, Hoffa issued a Notice to the members of Local 293 informing them that a hearing on the temporary emergency trusteeship would be held on Tuesday, October 12, 2004.[3]  Def. Ex. D.  The notice informed the members of their right to attend the hearing.  *Id.*

The hearing took place as scheduled on October 12, 2004; it lasted from approximately 10:00 a.m. until 6:30 p.m.  Hoffa appointed three union officials to the panel.  The individuals were the principal officer of a local union in New Hampshire and two International Representatives of the IBT, one based in Detroit, Michigan and the other in Williamsville, Illinois.[4]  The three panel members conducted the proceedings; no attorneys participated for any party.  Forty-Four members of Local 293 attended all or part of the hearing.

--------------------------------------------------

[3]  According to the IBT Constitution, the Notice for the hearing had to be issued at least 10 days prior to the day of the hearing.  Also required by the IBT Constitution, the post-notice hearing was to be held within 30 days of the appointment of the temporary trustee.  Both of these requirements were satisfied.

[4]  The panel was comprised of three IBT members, none of whom were from the Cleveland area. The panel members were Dennis Hand from Detroit, Michigan, Dave Laughton from New Hampshire, and Billy Cooper from Illinois.  Post-Notice Hearing Transcript at 5.

5

Nowak as Temporary Trustee, along with 2 non-members of Local 293, Steve Richmond and Michael Markowitz, presented the case in favor of a trusteeship;[5] the Plaintiff, William Satink, and two other officers of Local 293 who were removed as officers through the trusteeship, Charles Smith and Michael "Max" Zemla, argued against the imposition of the trusteeship.[6]  Both sides presented witnesses and evidence.  In addition to his own statements, and a report on the Local's financial situation, Nowak offered testimony from four witnesses and introduced various exhibits. The Local 293 officers opposing the trusteeship were provided the opportunity to cross-examine the Temporary Trustee's witnesses; though they assert they were placed at severe disadvantage in their efforts to do so because: (1) they had been provided inadequate notice of the matters addressed;[7] (2) they were forced to respond to hearsay

---

[5]  Prior to the hearing, Nowak never advised or notified members of Local 293 that he appointed Steve Richmond or Michael Markowitz as Assistant Trustees.  Both Richmond and Markowitz presented reports during the course of the hearing.  While these reports were not considered testimony, they were relied upon by Hoffa in making his decision whether to continue the trusteeship.

[6]  Counsel for Local 293 asked to participate in the hearing, or to at least attend, but that request was denied.

[7]  During the course of the hearing, Nowak and/or Richmond reported on several issues which were never referenced in the pre-hearing notice.  Specifically, Nowak and Richmond presented information regarding Local 293's policy of providing retiree health and welfare benefits to its employees who have worked for Local 293 for a period of nine or more years or served as officers to Local 293 for at least three terms (Post-Notice Hearing Transcript at 32, 198), that Local 293 was not collecting dues on individuals it assigned out of its referral hall (*Id*. at 219), that there was not a trust fund established to fund retiree benefits (*Id*. at 200), that some individuals were not entitled to the retiree health benefits, including Mr. Smith's ex-wife (*Id*. at 205, 206, 211, and 229), and that Richmond believed that Local 293 had been overpaying for health benefits. (*Id*. at 208-210).

6

statements from an investigation occurring years before;[8] and (3) their requests to seek advice of counsel during the course of the hearing were denied.  The Local 293 officers also made statements of fact and argument in opposition to the trusteeship and introduced six exhibits of their own. In addition, 15 members of Local 293 made statements on the record in support of, or in opposition to, the trusteeship; of these, 12 spoke in opposition to the trusteeship. A court reporter was present at the hearing and prepared a transcript on an expedited basis; the transcript was provided to the panel members on or about October 18, 2004.

In accordance with Article VI, Section 5(a) of the IBT Constitution, the panel members prepared a written recommendation to Hoffa, signed on November 4, 2004.   The panel unanimously recommended that the trusteeship over Local 293 continue. Def. Ex. P.  The 11-page, single-spaced panel decision discussed the testimony and other evidence presented at the October 12 hearing and concluded that the evidence supported the grounds for the trusteeship set forth in Hoffa's Notice dated September 20, 2004.

Specifically, the panel concluded that, contrary to the representations of the officers of Local 293, its financial situation was deteriorating and that it generally was not operating in the best interests of its members. The panel cited the continuing decline in the Local Union's net assets, its ongoing commitment to pay lifetime benefits even for relatively young individuals who had not worked at Local

---

[8] During the course of the hearing, Nowak offered several statements into the record, including various statements made by former and current employees of Local 293 during a 2002 IRB investigation, and affidavits from Keith Kloss, Lisa Asbury, and Carrie Knight.  While Mr. Smith did not object to the submission of the Keith Kloss affidavit, he did object to the submission of the other two affidavits.  The panel noted these objections, but nevertheless, allowed the affidavits to be submitted.  The panel noted that Mr. Kloss  was present at the hearing and could be called as a witness by Mr. Smith if he wanted to question him regarding statements in his affidavit. It appears that neither Ms. Asbury nor Ms. Knight were present at the hearing.

293 in many years, its excessive payments for health insurance premiums, and its employment of a janitor at $900 per week.[9]  Def. Ex. P.  at 2-3, 9-10. The panel also concluded that, despite a consent decree entered into with the Department of Labor and a review by an outside consulting firm to establish appropriate procedures for allocating the time Local 293 employees spent performing work for its affiliated benefit funds, the Local still had not fully implemented the proper procedures, despite continuing to receive large "administrative" fees from the funds. *Id*. at 3-5.

The hearing panel also found that the contract between Local 293 and the House of LaRose undercut the wages, benefits, and working conditions contained in the contract between Teamsters Local 348 and the same employer.  Because of this, the panel determined that Local 293's contract with the House of LaRose "created a strong incentive for LaRose to eliminate work performed under the higher-cost Local 348 contract and bring that work under the lower-cost Local 293 contract." *Id*. at 5. In addition, the panel found that the Local 293 officers had entered into a side agreement with the House of LaRose that the picket line protection language of the Local 293 collective bargaining agreement would not apply to any picketing by members of Local 348 at the House of LaRose. This side letter, however, was not presented to the Local 293 members for ratification. *Id*. at 7-8. Furthermore, the panel found that Local 293's officers failed to submit either that side letter or the overall agreement with the House of LaRose for approval to the Teamsters Joint Council 41 before executing the agreements, as required by the IBT Constitution and the bylaws of Joint Council 41 (of which both Local 293 and Local 348 are members). The panel concluded that this omission was deliberate. *Id*. at 5-6, 7-8.

---

[9]  Neither the "commitment to pay lifetime benefits", the "excessive payment for health insurance premiums, nor the "employment of a janitor for $900/week" were reasons mentioned in the pre-hearing notice given to Local 293, and none of these were cited in support of Hoffa's decision to impose an emergency trusteeship.

8

Among other things, the panel found that the Local 293 officers were aware that Local 348's picketing was sanctioned by the IBT, but that they had adopted and approved their counsel's statements to the membership that the picketing was illegal, and that the employees could be permanently replaced if they honored the picket line. In addition, the panel determined that Local 293 allowed its members (including a Union steward) to drive vans with strike breakers across the picket line and "referred dozens of workers to the House of LaRose through the Local 293 hiring hall." *Id*. at 6-8. The panel also found that Local 293 failed to support, and actively undermined, the efforts of Local 348 at a time when other Teamster members and other unions, as well as public officials, were supporting the picketers. *Id*. at 8-9. The panel concluded that Local 293's conduct "undermines the ability of the Teamsters Union to conduct effective strikes and obtain the assistance of other labor organizations." *Id*. at 9.

Based on the evidence presented to it, the panel found that the record supported the allegations contained in the September 20, 2004, Notice of Trusteeship, and that Hoffa had cause to place Local 293 in trusteeship. *Id*. at 10. The panel recommended that the temporary trusteeship be continued in accordance with the IBT Constitution and applicable law until the General President or the General Executive Board determines that self-government should be restored to Local 293. *Id*.

Late on November 8, 2004, (after the Court informed the parties of its decision to enter a TRO), Hoffa issued a decision adopting the factual findings of the panel and determining that Local 293 should remain in trusteeship. Def. Ex. Q. He concluded that "the trusteeship over Local Union 293 should be continued in order to restore the Local Union's financial base and to assure that the Local is functioning in a democratic manner." *Id*. Specifically, he found that the trusteeship should continue in order to allow the Temporary Trustee "additional time to restore the Local Union's financial base, to rectify the allocation with the Local 293 Pension and Health & Welfare Funds, to correct other financial matters

at the Local Union, to deal with the substandard contract at LaRose, and to restore the Local Union's representation of its members to appropriate levels." *Id*. at 5.  Hoffa issued his decision in the form of a Notice to the membership of Local 293.  With the completion of the internal hearing, as required under the provisions of the IBT Constitution, the "emergency" trusteeship of Local 293 no longer existed.

## II.    REASONS THE COURT ISSUED THE TRO

On November 9, 2004, this Court entered a formal order confirming the TRO dissolving the emergency trusteeship imposed on Local Union 293 by the IBT and enjoining the IBT from supervising the affairs of Local 293 through the trusteeship process.  The Court issued the TRO because it found that Hoffa had not articulated a good faith basis to impose an emergency trusteeship - *i.e.*, in the absence of any notice to Local 293 and before providing the local an opportunity to be heard.

The LMRDA requires that trusteeships only be established in accordance with both the procedural and substantive aspects of the IBT Constitution and for a purpose recognized under the LMRDA.[10]  29 U.S.C. § 431, *et seq*.  Specifically, Section 304 of the LMRDA provides that a trusteeship established in conformity with the procedural requirements of the labor organizations's constitution and bylaws and authorized or ratified after a fair hearing shall be presumed valid.  In order to defeat this presumption, the local union must show by clear and convincing evidence that the substantive reasons proffered by the IBT for establishing or maintaining the trusteeship were either in

---

[10] Section 302 of the LMRDA, 29 U.S.C. § 462, provides as follows:

> Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.

10

bad faith or for a purpose not listed under Section 302 of the LMRDA. *Teamsters Local Union No. 406 v. Crane*, 848 F.2d 709, 712-713 (6th Cir. 1988) (noting that courts are to give deference to the judgement of a union official who imposes a trusteeship as long as there is "substantial evidence" to support the reasons proffered in support of the trusteeship).

When a trusteeship is imposed on an <u>emergency</u> basis, the general president, in order to comply with the procedural mandates of its constitution, must have had a good faith belief that a situation within the local was developing suddenly and unexpectedly, or through an unforeseen combination of circumstances, that the situation was one implicating corruption, financial malpractice or undemocratic procedures, and that the circumstances demanded immediate action. *International Bhd. of Teamsters v. Local 810*, 19 F.3d 786, 793 (2d Cir. 1994). Even when a plaintiff local is successful in showing that the union imposing the trusteeship did not comply with the these strict requirements for the imposition of an emergency trusteeship, the plaintiff local must still show bad faith or an improper purpose by a preponderance of the evidence to defeat the presumption of validity that otherwise attaches to internal union decision-making processes regarding trusteeships. *See Chieco v. International Bhd. Of Teamsters*, 983 F. Supp. at 396, 400-401 (S.D.N.Y. 1997).[11] The plaintiff then must also establish the remaining elements of injunctive relief - the existence of irreparable harm, greater harm to the plaintiff than to the defendant, and that the public interest will be better served by granting injunctive relief. *Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 460 (6th Cir. 1999).

Hoffa relied on three factors when imposing the emergency trusteeship on Local 293. Specifically, Hoffa relied on: (1) certain financial practices of Local 293; (2) the terms of a contract

---

[11] When the requirements for the imposition of a trusteeship are satisfied, plaintiff must overcome a presumption of validity that attaches to the trusteeship decision by <u>clear</u> and <u>convincing</u> proof.

negotiated by Local 293 with the House of LaRose in 2002; and (3) the fact that certain members of Local 293 refused to honor a picket line established by Local 348.

   1.   <u>Plaintiff Proved By A Preponderance Of The Evidence A Likelihood Of Success That The IBT Did Not Have A Claim Of Right For Imposing The Trusteeship</u>

        A.   <u>Hoffa Could Not Have Had A Good Faith Belief That An Emergency Situation Existed</u>

       In order to obtain injunctive relief, Plaintiff first had to show that Hoffa did not comply with the procedural mandates of the IBT Constitution.  To properly invoke the emergency trusteeship provision, a union official must have a "good faith belief" that an emergency situation existed.[12] *International Bhd. of Teamsters v. Local Union No. 810*, 19 F.3d at 793.  Although the IBT Constitution does not define the term "emergency", courts have defined it as a situation requiring "immediate action." *Id.* (defining emergency as "an unforseen combination of circumstances or the resulting state that calls for immediate action"); *Retail Clerks Union Local 770 v. Retail Clerks Int'l Assoc.*, 479 F.2d 54, 55 (9th Cir. 1973) (holding "the imposition of a trusteeship is an extraordinary intrusion into the affairs of a local union. Such a step should not be taken without a prior hearing, absent some necessity for immediate action."). Accordingly, Plaintiff had to show that there could be no good faith basis for believing that an emergency existed or that any of the cited reasons articulated by Hoffa constituted an emergency, mandating immediate action.

---

       [12] It is not the job of this Court to determine whether an emergency actually existed, but rather if there was a good faith belief by Hoffa that one existed. *Teamsters Local Union 406 v. Crane*, 848 F.2d at 714; *Morris v. Hoffa*, 361 F.3d 177, 187 (3d. Cir. 2004).

1.  Local 293's Financial Condition Was Not Deteriorating Suddenly or Unexpectedly

Hoffa's first cited reason for imposing the trusteeship was the alleged "deteriorating financial condition" of Local 293. In Nowak's report to Hoffa, Nowak alleges that the finances of Local 293 had been sustained largely by payments from its Health and Welfare Pension Funds. Def. Ex. B. Nowak's report further states that because the Funds have no employees, "the administration of the Funds was performed by the staff at the Local Union." *Id*. As Plaintiff established at the hearings on this matter, there was nothing new or emergent about this information, and there certainly was no evidence of a need for further immediate action to address this concern. First, it is undisputed that the financial arrangement between Local 293 and its benefit funds was investigated as early as 2001 by three separate organizations: the DOL, representatives from Hoffa's RISE program, and the Internal Review Board ("IRB"). After these investigations, the reimbursement arrangement was changed or corrected. Furthermore, on its own accord, Local 293 began studying and separating the operations of the Benefit Funds from those of Local 293 in 2003, and implemented a new program in 2004 by largely discontinuing its reimbursement arrangement with the Funds. Moreover, the per capita reimbursement arrangement, which the DOL found objectionable in 2001, was discontinued in that same year. And it is clear that the IBT knew both about the supposedly objectionable financial arrangements for years and about the changes being implemented to correct those arrangements.

Indeed, the IBT conducted an audit of Local 293 in 2003 after it began receiving monthly financial reports from Local 293 detailing its financial condition. Because the monthly reports had been providing the IBT with a continuous snapshot of Local 293's financial condition since the audit, Hoffa

13

could not claim that information about Local 293's financial condition was a new development.[13] It is clear, moreover, that Local 293 had been taking steps to address all of its financial concerns and irregularities.  Accordingly, there was simply no good faith basis for Hoffa's statement that concerns about the financial condition of Local 293 was an unexpected event that required immediate action.

2.  <u>Local 293's Alleged Inferior Contract Had Been Implemented Nearly Two Years Ago</u>

Next, Hoffa stated that Local 293's substandard contract with the House of LaRose "motivated the company to move the Akron work to Cleveland." Def. Ex. C at 1.  The fact is, however, that Local 293's allegedly substandard contract with the House of LaRose was signed by then Local 293 President James Petrucci on August 27, 2002, more than two years prior to the imposition of the emergency trusteeship.  Plt. Ex. 1.  It is at best unclear, moreover, whether the Local 293 contract is actually "substandard."  Defendants state that the Local 293 contract was substantially inferior to the Local 348 contract because the Local 348 contract would cost the House of LaRose $1.8 million dollars per year more than the Local 293 contract.  While there is serious room for debate over the value of the respective contracts, (Plaintiff's proffered material evidence that the Local 348 contract was simply not as valuable as the IBT claimed), the fact is the House of LaRose was simply not willing to operate under the more costly Local 348 contract.

Local 348 was notified almost two months prior to Local 293's decision to sign the Collective Bargaining Agreement with the House of LaRose that the House of LaRose was contemplating a relocation.  On July 1, 2002, the House of LaRose, through its counsel, Craig Brown, notified Local 348

---

[13] Local 293 asserts that its financial condition is improving instead of deteriorating.  Substantial evidence was presented on this point.  The Court need not resolve that question, however. The proper inquiry for this Court is not whether Local 293's finances were in fact deteriorating, but whether Hoffa had a good faith basis to believe that Local 293's financial condition presented an emergency situation.

14

that "it was seriously considering closing its distribution center in Akron and relocating those operations to Cleveland because of significant financial and operational reasons."  Plt. Ex. 3.  Brown further indicated that the House of LaRose was willing to negotiate with Local 348 over both the closure-relocation decision and the effects of that decision.  *Id*.  Thereafter, in the time between the notice from the House of LaRose and conclusion of the Local 293 Collective Bargaining Agreement, Brown requested negotiations with counsel for Local 348, Mr. Robert Baptiste, on at least three different occasions.  Plaintiff's Compl. at ¶ 30.  Batiste finally responded on August 16, 2002, but only to state that he would be contacting Brown "shortly" to schedule negotiations. Plaintiff's Compl. at ¶ 32.  It is clear from the record, accordingly, that the House of LaRose had made its own decision that the more expensive Local 348 contract was cost prohibitive, and that absent concessions from Local 348 - concessions Local 348 would not even discuss - the House of LaRose would be forced to relocate its facilities.  There is, accordingly, no meaningful evidence in the record to conclude that the Local 293 contract was actually "substandard" to anything under which the House of LaRose was willing to operate.

Even assuming, moreover, that Local 293's contract was inferior, neither this fact nor the failure to submit the contract for approval before it was executed in August of 2002, presented a sudden and unexpected situation requiring immediate action as of the Summer of 2004.  The IBT was aware of Local 293's contract, and of Local 293's alleged failure to deposit that agreement with Joint Council No. 41, many months prior to the imposition of the trusteeship.  Indeed, the IBT and Local 348 knew for over two years prior to September 2004 that the House of LaRose was planning to relocate to Local 293's area.  During those two years, the IBT watched as Local 348 refused to negotiate with the House of LaRose for nearly 19 months and then submitted possibly illegal proposals that contemplated splitting

15

recognition of bargaining authority between the two local unions. Hoffa simply can not claim in good faith that Local 293's decision to perform work for the House of LaRose, in whatever capacity, dictated an emergency that demanded immediate action.

Hoffa attempted to buttress his argument that Local 293's agreement was inferior by citing to an alleged side letter to a prior contract between James Petrucci, then Secretary-Treasurer of Local 293, and the House of LaRose providing that Local 293 would not respect the picket lines of Local 348 at the House of LaRose's Cleveland facility. Not only does this allegation concern an individual who is no longer in office, but the letter had long-since expired; the letter related to a contract between Local 293 and House of LaRose that was effective from 1999-2002. The record is clear, moreover, that while negotiating the subsequent 2002 agreement, the officers of Local 293 refused to condone such an agreement. Thus, Hoffa is hard-pressed to assert that an action taken in 1999, which no longer has any binding effect, required an immediate response on September 21, 2004.

### 3. The Picket Line Crossings Had Been Known For Months

Last, Hoffa alleges that an emergency situation existed because members of Local 293 had been crossing the picket line of Local 348 and it appeared to Nowak that officers of Local 293 had directed them to do so. Local 293 does not dispute that some members did cross the picket line, but do dispute that officers of Local 293 ever authorized that action; rather they assert that they always made their view clear that Local 293 members should honor the picket line. Even assuming it is true that the officers of Local 293 either condoned or ignored the crossing of Local 348's picket line, the IBT, knew about the picket line crossings since at least June of 2004. And, the IBT was aware that officers of Local 293 had prepared charges to file against their members who crossed the picket line. Plt. Ex. 18. In fact, officers of Local 293 were told to await an opinion from the IBT General Counsel as to whether charges should

16

be filed in connection with the picket line crossing before doing so.  As of the completion of briefing in this case, no opinion had been issued on this issue.  Having watched as Local 293 and Local 964 members crossed the picket line established by Local 348 for over three months, it is clear that Hoffa could not have had a good faith belief that those picket line crossings gave rise to an emergency situation.[14]  Accordingly, the Court finds that Hoffa did not act in conformance with the procedural requirements of the IBT Constitution when he imposed an emergency trusteeship over the affairs of Local 293.

### 4. Defendants Fail To Present Any Proof Of On-Going Corruption

The Defendants assert that Hoffa also had the right to implement the emergency trusteeship because he had a good faith belief that the situation at Local 293 was one involving corruption. Defendants cite *International Bhd. Of Teamsters v. Local 714* in which the Second Circuit held that "fresh" allegations of "ongoing" improprieties can support a General President's determination that an emergency exists. 109 F.3d 846, 850 (2d Cir. 1997).  Additionally, Defendants note that courts have found that an ongoing state of affairs may still support a good faith belief by the General President that a situation deserves immediate action.  *See International Bhd. of Teamsters v. Local Union 745*, 945 F.Supp 1186, 1195 (S.D.N.Y. 1996) (holding "that a continuous pattern of wrongdoing could, indeed, constitute a state of affairs that calls for immediate action.").  The critical difference between the cases cited by the Defendants and this case is that in both *Local Union 714* and *745* there was strong evidence of on-going corruption in the operations of the locals involved.  Here, while the defendants may have presented evidence of mismanagement, they did not present any evidence of corruption.  The only

_____

[14] The fact that members from Local 964 also crossed the line, with no repercussions from IBT, also undercuts the IBT's contention that these actions gave rise to a true emergency.

17

evidence regarding any financial impropriety was the allegation that Local 293 was still sustaining its finances with money from the Pension and Welfare Funds.  This allegation, however, was not "fresh", and given the changes implemented already, was not "on-going" within the meaning of the *Local Union 745* decision.

> B.    There Was A Preponderance Of Evidence That Hoffa Acted With Bad Faith And/Or For An Improper Purpose In Imposing The Emergency Trusteeship

Because Plaintiff met his initial burden of proving that a situation was not developing suddenly or unexpectedly, Plaintiff next only had to show by a preponderance of the evidence that the emergency trusteeship was initiated in bad faith, or that the justification proffered in support of the emergency trusteeship constituted a improper purpose within the meaning of the LMRDA.  Section 302 of the LMRDA, 29 U.S.C. § 462, provides as follows:

> Trusteeships shall be established and maintained . . . for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.

In deciding whether an articulated purpose falls within the bundles of Section 302, Courts should give deference to the judgment of union officials who impose trusteeships, but only so long as there is "substantial evidence" to support the reasons proffered in support of the trusteeship.  *See Teamsters Local Union No. 406 v. Crane*, 848 F.2d at 712-713 ("If there is no "substantial evidence which can be pointed to as justifying the decision of the union officials, then it is not likely that the imposition of the trusteeship was in good faith.").

As previously mentioned, Hoffa listed three reasons why he imposed the emergency trusteeship over Local 293: (1) concern about the financial condition of 293; (2) his concern about a contract

18

negotiated by Local 293 with the House of LaRose in 2002; and (3) his concern that certain members of Local 293 had refused to honor a picket line established by Local Union 348.  Based on the facts submitted in connection with the TRO, Plaintiff was able to show by a preponderance of the evidence that none of these proffered reasons constituted proper purposes within the meaning of the LMRDA.

        1.    <u>Local 293's Financial Woes Were Not The Product Of Corruption Or Malpractice</u>

Hoffa first cites Local Union 293's financial condition as a reason for the imposition of the emergency trusteeship.  Although the Court concedes that whether Local 293 was indeed in financial distress may be a factual question, this question is irrelevant.  Section 302 of the LMRDA states that there must be "corruption or financial malpractice."  Throughout the hearings, Defendants failed to present any evidence there was corruption by Local 293's officers.  At best, Defendants proffered evidence that the local officers were slow in responding to directives to unwind certain financial arrangements with its benefits funds.  In an effort to prove that Local 293 acted corruptly, Defendants rely on an IRB report dated April 10, 2002 that reads: ". . .given the Local's dependence upon the fees charged to Funds to meet its current obligations and that it is more structured to move money from the Funds to the Local because the Funds have no employees, the situation appears to be a continuation of prior abuses."  Def. Ex. I.  The weight of this statement, however, is lessened by the report's own concession that clear evidence of financial abuse is lacking.  *Id*.  More importantly, the changes implemented by Local 293 <u>after</u> the IRB report undercut any ability to rely on its conclusions a full two years later.  At this stage, Plaintiff is only required to show by a preponderance of evidence that the reasons proffered by Hoffa were either not substantiated, were pretext, or were not proper purposes under the LMRDA.  *See Chieco*, 983 F.Supp. at 400.  Because the IRB report cannot justify a belief that

financial corruption or malpractice was occurring as of September 2004, the Court finds that Plaintiff carried his burden of showing that this stated reason was not a proper purpose within the meaning of the LMRDA.

        2.      The Lack Of An Area "Standard" Belies Hoffa's Complaints About The 2002 House of LaRose Contract

As noted above, Hoffa cited an alleged substandard agreement between the House of LaRose and Local 293 as support for his decision to impose the emergency trusteeship. The problem with this decision, however, is that Defendants failed to present a "standard" by which to assess Local 293's agreement with the House of LaRose. Without a standard against which to assess the agreement, neither Hoffa nor the IBT could objectively evaluate the contract. Although Defendants list several areas where the Local 293 agreement pays lower wages to Local 293 members, Plaintiff was quick to point out areas where the Local 293 agreement is better than Local 348's agreement. Because there is no "standard" by which to critique the respective contracts and because the Local 293 contract is clearly better than Local 348's contract in certain material aspects, the Court found that Plaintiff had adequately proved by a preponderance that a vague description of its contract as inferior was not a proper purpose under the LMRDA for the imposition of a trusteeship.

Hoffa also asserted that Local 293's failure to submit the contract to Joint Council No. 41 justified the imposition the emergency trusteeship because that act violated union policies. Plaintiff, however, stated that he was never informed of an obligation to present the local union contract to the Joint Council and had never done so in the past. The Defendants offered no testimony or referred to any written evidence to rebut this fact during the TRO hearing and did little to explain why Joint Council authorization was required. Based on this evidence, the Court found, again, that Plaintiff proved by a

20

preponderance of evidence that there was insufficient evidence to support this asserted reason for the imposition of the emergency trusteeship and that a trusteeship on that ground, thus, could not be a proper purpose.

3. <u>Crossing A Picket Line Is Not A Proper Purpose For Imposing An Emergency Trusteeship</u>

The third reason cited by Hoffa for the imposition of the emergency trusteeship was the decision of some Local 293 members to cross the picket line established by Local 348. Although unions can fine individuals that cross established picket lines, those individuals have the right to work or cross the picket line afforded by Section 7 of the National Labor Relations Act. *NCR v. NLRB*, 466 F.2d 945, 958, 962 (6th Cir. 1972). Local 293 did, in-fact, attempt to fine those individuals who crossed the picket line, but those efforts were halted by IBT Beverage Division Director, Jack Cipriani.[15]  The IBT Beverage Director told the officers of Local 293 to await an opinion from the IBT General Counsel before filing charges. They have, as of yet, not been authorized to do so.

It is unlawful for a union to force a member to join a strike. *See* 29 U.S.C. § 158 (b). Plaintiff argues that the imposition of the emergency trusteeship over the affairs of Local 293 was an illegal effort by Hoffa, and/or the IBT, to force employees to join Local 348's strike. Neither the Court, nor the Defendants, could find a single case in which an emergency trusteeship was imposed because members of a local union crossed a picket line. Because the members of Local 293 enjoy a right recognized by the NLRA to cross a picket line in pursuit of work, the Court concluded that, to the extent that the trusteeship was imposed in an effort to interfere with that right, it had been imposed for an improper purpose under the LMRDA.

_____

[15] A draft of the intra-union charges against members who crossed Local 348's picket line was prepared by Local 293. Plt. Ex. 18.

Based on all the evidence, the Court found that Plaintiff was likely to succeed on the merits of his claim that Hoffa did not have a "good faith" basis for believing that an emergency calling for imposition of trusteeship over Local 293 existed and that Hoffa had imposed the emergency trusteeship over the affairs of Local 293 for improper purposes. As previously stated, however, the Plaintiff also had to satisfy the remaining elements required for injunctive relief - the existence of irreparable harm, greater harm to the plaintiff than to the defendant, and that the public interest will be better served by granting injunctive relief. While those factors are not as relevant to the current request for permanent relief, the Court addresses them briefly because they <u>were</u> pertinent to the entry of the TRO.

> 2. <u>Plaintiff Would Have Suffered Irreparable Injury If Relief Was Not Granted Because Local 293 Would Have Been Deprived Of Its Chance To Self-Govern</u>

Plaintiff claimed that Local 293 would have been irreparably harmed if it was not granted injunctive relief because it would have been denied its right of self-governance. *See Mason Tenders Dist. Council of Greater N.Y. v. Laborers' Int'l Union of N. A.M.*, 884 F. Supp. 823, 838 (S.D.N.Y.1995) (stating that the "LMRDA was enacted to preserve and protect, among other things, a local union's fundamental right of self-determination"). Not only did Plaintiff argue that any trusteeship would infringe upon Local 293's right to self-govern, he argues that the emergency trusteeship would have prevented Local 293 from deciding upcoming local union matters of some importance.

Specifically, and of immediate concern to Local 293, was the fact that it was scheduled to conduct nominations for its then upcoming elections in November of 2004.[16]  If the emergency

---

[16] Local 293 has seven officers: Secretary-Treasurer, President, Vice-President, Recording Secretary, and three (3) trustees. Elections for these positions are held every three years. Plaintiff's Compl. at ¶ 18-19.

trusteeship had continued, Local 293 would have been prevented from participating in both the nomination and election processes.

As Plaintiff pointed out, moreover, because Hoffa had employed the emergency trusteeship mechanism, it had deprived Local 293 of the right to self-govern without the opportunity for a pre-deprivation hearing, a right guaranteed by the IBT constitution and the LMRDA in all but the most exceptional of circumstances - circumstances the Court has found simply were not present here.  For these reasons, the Court found that the emergency trusteeship would have irreparably harmed the members of Local 293 if allowed to continue.

       3.    The Issuance Of Injunctive Relief Will Not Harm Others, But Rather Will Serve The Public's Interest

The Court concluded that issuance of the TRO would not harm the IBT, members of Local 348, or any other local union.  The dispute between Local 348 and House of LaRose does not depend upon whether Local 293 is placed into a trusteeship.  Indeed, published newspaper reports reveal that Local 348 has now come to terms with the House of LaRose, apparently undeterred by the Court's injunction against a trusteeship.  As to IBT, any alleged harm to its solidarity, is not only speculative, but is as attributable to IBT's own decision to act precipitously vis-a-vis Local 293 as it is to this Court's entry of a TRO.

The issuance of injunctive relief will also serve the public interest by promoting the purposes of the LMRDA, such as the right of the local unions to be self-governed and the right of individual union members to chose to work.

In sum, Local 293 proved by a preponderance of evidence that Hoffa did not have a good faith basis to believe that an emergency situation was developing and that the reasons he proffered for the

imposition of the emergency trusteeship were either factually not supportable or were not proper purposes within the meaning of the LMRDA.  The Plaintiff did, however, establish the remaining elements required to obtain injunctive relief.  Accordingly, and pursuant to Fed. R. Civ. 65(b), the Court ordered that the emergency trusteeship be dissolved and enjoined the Defendants from continuing to supervise the affairs of Local 293 through the trusteeship process.

Because the standards applicable to the entry of the TRO differ from those applicable to entry of permanent injunctive relief - particularly once a hearing on the propriety of a trusteeship has been conducted - this decision does not end the Court's inquiry.  The Court must now determine whether, in light of the additional materials submitted to it after its entry of a TRO, further injunctive relief is warranted.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id*.  The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of genuine issue of material fact.

*Celotex Corp. v. Catret*t, 447 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).

Once the moving party has satisfied its burden of coming forward with evidence demonstrating an absence of a genuine issue of material fact, the burden then shifts to the non-movant. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Department of Transportatio*n, 53 F.3d 146, 149 (6th Cir. 1995). The text of Federal Rules of Civil Procedure, Rule 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the non-moving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Courts deciding summary judgment motions "must view the evidence presented through the prism of the substantive evidentiary burden" applicable at trial. *Anderson*, 477 U.S. at 254. Heightened evidentiary burdens such as "the clear-and-convincing evidence standard of proof should be taken into account in ruling on summary judgment motions." *Id.* Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 255.

## IV.    DISCUSSION

Congress enacted Title III of the LMRDA "[t]o ensure that local affairs are governed by local members under democratic processes, with a minimum of outside interference, and to limit the ability of parent unions to establish trusteeships without following processes outlined in the union's constitution[.]" *Morris v. Hoff*a, Case No. 99-5749, 1999 U.S. Dist. LEXIS 19779, at *20-21 (E.D. Pa. December 28, 1999)(citing *Regan v. William*s, Case No. 86-643, 1986 U.S. Dist. LEXIS 30965 at *1-2

25

(W.D. Pa. May 16, 1986). Specifically, the LMRDA requires that trusteeships be established in accordance with the constitution of the labor organization imposing the trusteeship and for a purpose recognized under the LMRDA. Such trusteeships are afforded an 18 month presumption of validity.  29 U.S.C. § 462.

 As noted, Title 29 U.S.C. § 464(c) in part provides: "[A] trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing . . . shall be presumed valid . . . and shall not be subject to attack . . . except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under [29 U.S.C. § 462]."  As was fully discussed above, because this Court found that the procedural regularities for the imposition of an emergency trusteeship dictated by the IBT Constitution had not been satisfied, the full presumption of validity otherwise available under 29 U.S.C. § 464 (c) did not arise.  Hence, Plaintiff's burden was far less stringent.  Now that the post-notice hearing regarding the trusteeship for Local 293 has occurred, however, all parties agree that the question of whether an emergency existed is moot, as is the question of whether the procedural regularities necessary to a finding of emergency status was satisfied.  Hence, the presumption of § 464 (c) must now attach to Hoffa's determination, as long as the post-notice hearing itself conformed to the

IBT's procedural requirements for such a hearing.[17]  *See Teamsters Local Union No. 406 v. Crane*, 848 F.2d at 713 ("Once a court has concluded that a trusteeship was imposed in a procedurally proper manner, that trusteeship must be presumed valid.").

If the IBT procedurally conformed to the requirements of its Constitution, Plaintiff may only rebut the presumption of validity by demonstrating with clear and convincing evidence that Hoffa's determination to maintain the trusteeship over Local 293 was made in bad faith or that the purposes for which the trusteeship was continued were not ones authorized by Section 302 of the LMRDA.  *Id.*  If the presumption of validity never attaches, then the question of whether the trusteeship was improperly imposed or maintained is a question of fact for a jury.  *Argentine v. USWA*, 23 F. Supp.2d 808, 816 (S.D. Oh. 1998).

Plaintiff alleges that the imposition of the trusteeship was procedurally improper and that the hearing was substantively unfair.  Additionally, Plaintiff argues that the reasons articulated in Hoffa's November 8, 2004 decision confirming continuance of the trusteeship were either pretext for his bad faith or purposes not authorized by the LMRDA.  Thus, Plaintiff argues that the trusteeship should not be  presumed valid and that a jury should determine whether the maintenance of the trusteeship should

_____

[17]  Courts have disagreed over whether § 464(c) makes the holding of a "fair hearing" a prerequisite to a valid trusteeship, or whether the "fair hearing," if held, merely affords the national union a presumption of validity.  The majority view is that a hearing is an absolute requirement for a validly imposed trusteeship.  *See, e.g.*, *United Mine Workers v. United Mine Workers*, 154 U.S. App. D.C. 322, 475 F.2d 906 (D.C. Cir. 1973)*; Retail Clerks Union v. Retail Clerks International Association*, 479 F.2d 54 (9th Cir. 1973)*; Jolly v. Gorman*, 428 F.2d 960 (5th Cir. 1970)*; Tam v. Rutledge*, 475 F. Supp. 559 (D. Hawaii 1979)*; Luggage Workers Union v. International Leather Goods, Plastics & Novelty Workers Union*, 316 F. Supp. 500 (D. Del. 1970).  The view in this Circuit, however, is that § 464(c) only establishes a presumption of validity and that, even in the absence of a fair hearing, a trusteeship decision can be deemed appropriate upon a proper factual showing.  *See Teamsters Local Union No. 406 v. Crane*, 848 F.2d at 714; *Argentine*, 23 F. Supp.2d at 816.

be continued.[18]

A. The Trusteeship Was Imposed And Maintained In Conformance With The Procedures Of The IBT

As to the alleged failure of the IBT to follow the procedures set forth in its Constitution, Plaintiff specifically states that the October 12, 2004 hearing was not conducted by an uninvolved panel, the hearing panel did not include at least one member from the area involved, and the hearing notice was issued after the appointment of the temporary trustee.

1. The Members Of The Panel Were "Uninvolved"

Article VI, Section 5(a) of the IBT Constitution requires the General President to appoint a Panel of uninvolved members of the IBT to determine whether a trustee should be appointed or maintained. In the case *sub judice*, Plaintiff argues that Dave Laughton, who was appointed to the panel by Hoffa, is not uninvolved, but instead, has substantial ties to key people influential in recommending the imposition of the trusteeship. Laughton is the Secretary-Treasurer of the IBT Brewery Conference, second in position only to Jack Cipriani. Plaintiff argues that Cipriani is biased against Local 293 because of his previous dealings with it regarding jurisdictional debates between Local 293 and Local 348.[19] Plaintiff further points out that the former trustee, Nowak, who is representing IBT in favor of the trusteeship, is an International Representative of the IBT Brewery Conference in the Central Region.

─────────────────────

[18] It is up to the Court to determine whether the presumption of validity attaches. Thus, the question of whether the regularities of the IBT Constitution were satisfied, in a given case, is a question to be decided by the Court, it is never to be relegated to the jury. Only when the Court first determines that the procedural requirements have not been satisfied are local union plaintiffs in a position to argue that a jury question arises.

[19] Plaintiff argues that Cipriani attempted to coerce Local 293 into an illegal settlement agreement that would have divided jurisdiction in the House of LaRose's Brecksville facility between Local 293 and Local 348. Nov. 29 Transcript at 32.

28

Additionally, Plaintiff argues that the attorney for the IBT Brewery Conference is Robert Baptiste. Baptiste was the attorney negotiating the settlement between the House of LaRose and Local 348 while the House of LaRose was contemplating its relocation decision.  Baptiste made proposals during these negotiations that insisted Local 348 be recognized as the representative of former Akron employees at the new House of LaRose facility in Brecksville, a facility within the Local 293's territory.  Plaintiff argues that the connections among the panel, the IBT Brewery Conference, its counsel, the former trustee, and Local 348 are quite simply too blatant to ignore.

When given the chance to argue this issue during oral arguments in the November 29, 2004 hearing, counsel for Defendants unhelpfully stated that "the international constitution is a document that's been long existent.  That language has been there for a long period of time, and as far as we can determine, there's been never a challenge [to] who the individuals are that are in the panel."  Nov. 29 Hearing Transcript at 48.  Defendants further argue that merely because Laughton was involved in the same industry does not make him *de facto* involved or, more importantly, biased or prejudiced against Local 293.

Without any guidance from other courts or from the IBT Constitution (or, frankly from its counsel) suggesting what the term "uninvolved" means, keeping in mind the deference it must afford union decisions, especially such uniquely internal decisions, this Court does not feel that it can apply a rigid definition.  Although this Court understands Plaintiff's argument, and believes that the appointment of Laughton certainly was a poor choice on Hoffa's part, the fact remains that Plaintiff has not shown any evidence that Laughton actually was biased towards it.  Laughton did not have previous dealings with either Local 293 or 348 and was not involved in advising Hoffa on his original decision to impose an emergency trusteeship.  The Court has reviewed the entire transcript of the proceedings, moreover,

29

and finds no indication that Laughton acted to inhibit Local 293's ability to argue against imposition of a trusteeship or to unduly advantage Nowak's efforts in support of the same.  Without any evidence suggesting that Local 293 actually was prejudiced by Laughton's appointment, the Court will not deem it procedurally irregular for purposes of this analysis.

        2.      <u>The Panel Was Composed Of At Least One Member From The Area Involved</u>

Plaintiff next argues that the hearing panel was not comprised of at least one member from the area involved.  Article VI, Section 5(a) of the IBT Constitution also states that at least one member of the hearing panel be from the "area" involved.  Plaintiff argues that the term "area", as used in the IBT Constitution, means the Cleveland area.  Plaintiff relies on the fact that the term is not defined anywhere in the IBT Constitution.  Further, Plaintiff argues that, because the term is not capitalized or set off by quotes, it must be given its ordinary meaning.[20]  Defendants respond that the term "area" refers to the four conferences or regions that comprise the United States.  Nov. 29 Hearing Transcript at 49.  Ohio, which resides in the Central Conference or region, also contains Michigan, Illinois, and Wisconsin.  *Id*.  Defendants maintain that the term "area" means regions and that, therefore, when Hoffa chose members from Illinois and Wisconsin, he satisfied the requirements of Article VI, Section 5(a).  Akin to Plaintiff's argument that there is nothing to suggest that the term refers to a multi-state region, there is also nothing that limits the boundaries to the "Cleveland" area.  Even applying the ordinary meaning, as suggested by Plaintiff, the definition is broad enough to encompass Defendants' definition.  Given that Plaintiff has failed to point to any proof that the appointment of these individuals in any way harmed Local 293 or that these members were biased, this Court will not consider the hearing unfair because of the panel

-------------------------------------------------

[20] According to the Merriam Webster On-Line Dictionary, "area" is defined as "a particular extent of space or surface...a geographic area."

member appointments.

### 3.  The Publication Of The Notice Was Procedurally Correct

Plaintiff last argues that the appointment of the trustee was invalid because it was made before Hoffa published the time and location of the post-notice hearing.  Plaintiff relies on Article VI, Section 5 of the IBT Constitution which reads that Hoffa "may appoint a temporary Trustee to take charge and control of the affairs of such Local Union . . . provided, however, that before the appointment of such temporary Trustee, the General President shall set a time and place for a hearing for the purpose of determining  whether such temporary Trustee shall be appointed."  Plaintiff further asserts that while Hoffa may impose an emergency trusteeship, this does not excuse him from setting a hearing prior to appointing the temporary trustee.  Plaintiff asks the Court to consider Article VI, Section 6 of the IBT Constitution that states in part: ". . . the temporary Trustee may be appointed prior to such hearing, but such hearing shall then commence within thirty (30) days . . . ."  Plaintiff asserts that the use of "such" refers back to the hearing referenced in the provision requiring the General President to set a hearing prior to appointing the trustee.  Defendants assert that the LMRDA simply does not require the General President to publish the time and location of the hearing prior to the imposition of the emergency Trustee.

The LMRDA specifically contemplates emergency trusteeships being imposed before a hearing is conducted. "Because the Act provides that a trusteeship may be 'authorized *or ratified* after a fair hearing', . . .a hearing meeting the requirements of the Act need not always precede the imposition of a trusteeship." *Morris*, 361 F.3d at 196 (emphasis added)(quoting *Becker*, 900 F.2d at 769) (quoting 29 U.S.C. § 464(c))(emphasis deleted).  "There seems to be no requirement, however, that the hearing occur prior to the imposition of the trusteeship for the trusteeship to be valid. The language of § 464(c),

31

stating that a trusteeship may be either "authorized or ratified" after a fair hearing, suggests that a post-imposition hearing will pass statutory muster." *C.A.P.E. Local Union 193 v. International Bhd. Of Painters and Allied Trade, et al.,* 598 F.Supp 1058 at 1068.  Just as there is no binding obligation to conduct a hearing prior to appointment of the trustee, the Court finds there is no obligation to set the date and time for the hearing before appointment of the trustee, provided the General President does set <u>such</u> a hearing within thirty (30) days from the appointment of the trustee.  *See* Article VI, Section 5(a) of the IBT Constitution.  Plaintiff's argument is, therefore, without merit.

Accordingly, this Court finds that the emergency trusteeship was imposed and maintained in conformance with the procedural requirements of the IBT Constitution and the LMRDA.

### B.     The Post-Notice Hearing Was Substantively Fair

Before the 18 month presumption of validity attaches, the IBT must conduct a "fair" post-notice hearing.  *Argentine*, 23 F. Supp.2d at 816.  While a fair hearing under the LMRDA need not include all the formalities of a judicial proceeding, the "fair hearing" contemplated in § 462(c) requires certain minimal elements: "written notice of the charges which allegedly justify the trusteeship; presentation of evidence and witnesses in support of the reasons for imposing the trusteeship; and the opportunity for some cross-examination and presentation of rebuttal evidence." *C.A.P.E. Local Union 193,* 598 F.Supp 1058 at 1070; *see also, International Bhd. of Tel. Workers v. International Bhd. of Tel. Workers*, 261 F. Supp. 433 (D. Mass. 1966); *Plentty v. Laborers' International Union*, 302 F. Supp. 332 (E.D. Pa. 1969).

The notice should set forth the factual circumstances justifying the imposition of the trusteeship with sufficient specificity so that the affected local has a fair opportunity to prepare a defense. *Becker*, 900 F.2d at 768-69. The notice must also provide the date, time and location of the hearing, and indicate

32

that the local will have the opportunity to respond to the charges. *Id.*; *Donatello v. McKenzie*, 826 F. Supp. 780, 782 (S.D.N.Y. 1993). Courts do not, however, require any particular form of notice, so long as the notice, together with any written communications supplementing it, adequately informs those concerned of the date and time of the hearing and of the issues to be heard. *J.D. Jolly v. Gorman*, 428 F.2d 960, 967 (5 th Cir. 1970) (citations omitted). Courts have taken a more relaxed view when it comes to procedures of internal union hearings when the stated reasons for the imposition of the trusteeship are for purposes identified under the IBT Constitution. *See Id.* at 965 (stating that "precise compliance with the labor organization's constitutional procedures is not necessarily required as long as there is substantial compliance consistent with the purposes of the Labor-Management Reporting and Disclosure Act.").

Plaintiff argues that the post-notice hearing was unfair. Specifically, Plaintiff argues that non-members were allowed to present evidence at the hearing, that the hearing notice did not adequately inform Local 293 of the pending charges, that the officers of Local 293 were not allowed to cross-examine all the witnesses, that Local 293 was not afforded sufficient time to review documents presented by the Trustee, and generally that the hearing itself was a sham.

      1.    The Post-Notice Hearing Was Conducted In Conformance With Hoffa's Statement Of Procedures

In a notice dated September 28, 2004, Hoffa set a date and time for a hearing "to consider whether the temporary trusteeship imposed over the affairs of Local 293 should be continued or dissolved." Hearing Notice at p. 1. In the Hearing Notice, Hoffa also set forth several procedures to be followed for that hearing. Paragraph two of the notice provides that: "[o]nly members of Local 293, the Temporary Trustee, and the Assistant Trustees may attend and participate at the hearing. Counsel

for the Hearing Panel may also be present. A non-member may testify on a specific issue only if called as a witness by a participant." *Id.* at 2.

Plaintiff asserts that the hearing was unfair because Michael Markowitz and Steven Richmond, both non-members of Local 293, participated in the hearing. Markowitz was permitted to question several witnesses and make a report, and Richmond was permitted to state a report of the affairs of Local 293 on the record. Additionally, all witnesses were sequestered. Richmond, however, was not sequestered, and was permitted to hear the testimony of all witnesses. The same courtesy was not provided to Max Zemla, an officer of Local 293, who entered an appearance on behalf of Local 293, but was sequestered for most of the hearing.

Although Defendants conceded that Nowak never told Local 293 or made an announcement at the hearing that Richmond and Markowitz were acting as assistant trustees, Defendants assert that there is no requirement to do so. Nov. 29 Hearing Transcript at 51-52. Defendants further assert that Local 293 should have been aware that Richmond and Markowitz were assisting Nowak because both gentleman had been at the local union gathering information and locating documents for some substantial period of time. Indeed, Plaintiff does not appear to dispute that Richmond and Markowitz were acting as assistant trustees, only that Plaintiff was not adequately informed of their role or of the fact that they would be presenting findings at the hearing.

There are several problems with Plaintiff's concerns. First, as noted, a hearing in this context will be deemed fair as long as it substantially comports with the general procedural requirements set forth in the notice. *See Jolly*, 428 F.2d at 965. The Court is not to project upon internal union hearings the same procedural formalities that are required in a court of law. As long as Plaintiff is provided with basic hearing rights - notice, the right to present evidence, and the right to challenge evidence - the

34

hearing must be deemed fair.  *See Teamsters Local Union No. 2000 v. Hoffa*, 284 F.Supp 2d. 684, 690

(E.D. Mich. 2003) (*quoting International Bhd. Of Boilermakers v. Local Lodge D238*, 865 F.2d 1228,

1236 (11ᵗʰ Cir. 1989))("A fair hearing has three minimum requirements: (1) notice of the charges, (2)

presentation of evidence and witnesses, and (3) an opportunity for cross-examination.").

Second, Plaintiff was concerned with a number of matters that occurred at the hearing about

which they registered no objection.  While, again, court familiarities are not required, registering

concerns about issues like sequestration, or a particular presentation of evidence, would have given the

panel an opportunity to consider those concerns and possibly make adjustments.  Plaintiff bears some

responsibility for the fact that some of the procedural problems about which they now complain were

never addressed on the record.  While Local 293 might feel that every procedure was not followed

according to the letter, this Court finds that the procedures were sufficiently adequate to be considered

fair.  Without Plaintiff pointing to a definitive departure from established procedures, this Court

determines that substantial compliance with those procedures occurred.

### 2.    The Hearing Notice Was Not Fatally Defective

The right to a "fair hearing implies more than an opportunity to be heard before an official body.

It includes written charges and fair notice of the hearing so that the local can prepare its defenses."

*Luggage Workers Union*, 316 F. Supp. at 508; *Underwood v. Malone*y, 152 F. Supp. 648 (E.D. Pa.

1957). "The charges must state the acts upon which the parent union relies, the manner in which they

violate the constitution or otherwise justify the trusteeship, and whenever possible, the persons who

committed them." *Id*.

Plaintiff argues that the Pre-Hearing Notice was too broad to apprise Local 293 of the claims

against them so that Local 293 could appropriately defend itself.  The IBT Constitution does not require

35

any particular formal notice; it only requires a minimum dissertation of the facts giving rise to the charges. Here, the pre-hearing notice informed Local 293 that the trusteeship was prompted by concerns over its failure to correct certain financial improprieties, its contract with the House of LaRose, and the Local 348 strike. Putting aside the question of whether all these matters were proper purposes under the LMRDA, there is no question that Plaintiff generally understood the matters about which Hoffa complained before participating in the October 12, 2004 hearing. While it does not constitute the optimal form of "notice" to a party to any proceeding, it remains true, moreover, that the exchange of information arising from the institution of this action warned Plaintiff in some meaningful detail regarding the nature of Hoffa's concerns about the operation of Local 293. Thus, by the time the post-notice hearing occurred, Plaintiff was fully aware that the hearing would address the continued financial ties between Local 293 and its benefit fund, the resulting financial strain on Local 293 from the need to unwind those ties, the fact that Local 293 had entered into an allegedly "substandard" and "unauthorized" contract with the House of LaRose, and the fact that Local 293 members were crossing the Local 348 picket line at the House of LaRose's Brunswick facility. Under these circumstances, the Court finds that the pre-hearing notice was adequate to allow Local 293 to respond to the charges against it.

More troubling to the Court, however, are the additional reasons proffered in support of the trusteeship by Nowak and the assistant trustees during the post-notice hearing. The September 20, 2004 pre-hearing notice was entirely void of any reference to several new reasons relied upon by Hoffa in his decision to continue the trusteeship. Specifically, the post-hearing notice provides that Local 293 continued to provide health and welfare coverage for certain persons not entitled to it; Local 293 employed an individual as a janitor at the rate of $900 per week; Local 293 overpaid approximately

36

$20,000 per year in health care premiums; and that the Local Union paid approximately $300,000 in legal fees each year. Def. Ex. Q at 4. Although these reasons were never provided to Local 293 in a pre-hearing notice, they were nevertheless relied upon by Hoffa in determining that the emergency trusteeship should be continued. *Id.* Counsel for Defendants stated that the hearing was the first opportunity for Nowak to present this information to the panel and that Nowak and Hoffa should, thus, be excused of any obligation to provide Plaintiff with notice of these items of concern. TRO Transcript at 43-48. Nowak also suggests that certain information was not available to him until after he was appointed temporary trustee and it was incumbent on him to present this information given his first opportunity. *Id.*

As stated earlier, the purpose of the notice is to apprise Local 293 of the reasons why Nowak believed that the temporary trusteeship should be continued and afford Local 293 an opportunity to prepare a defense. The appointment of an emergency trusteeship is not a fishing expedition for the IBT to trump up new charges against the local. Even more troublesome, Hoffa specifically relied on these new reasons to support his determination that the trusteeship should be continued. Without affording Local 293 an opportunity to become aware of these charges, or to prepare to respond to them before the hearing, this Court cannot hold that the hearing was fair as it relates to those reasons. Unfortunately for Plaintiff, Hoffa also relied on reasons for the continuation of the temporary trusteeship that <u>were</u> referenced in the pre-hearing notice. As long as <u>one</u> of the reasons cited by Hoffa in support of his decision was also cited in the pre-hearing notice, and was valid - meaning that it was not pretext for bad faith and was not for an improper purpose - a presumption of validity attaches to the trusteeship. *See, e.g., Pape v. Local 390, Int'l Bhd. of Teamsters*, 315 F. Supp. 2d 1297, 1314 (S.D. Fla. 2004); *Morris v. Hoffa*, 168 L.R.R.M. (BNA) 2581, 2587-88 (E.D. Penn. 2001); *Mason Tenders Dist. Council v.*

37

*Laborer's Int'l Union*, 884 F. Supp. at 836.  This Court may not decide that the hearing was unfair solely because some of the matters addressed were not contained in the pre-hearing notice.  The question is whether Plaintiff was on notice of and given an opportunity to respond to any of the items the panel (and ultimately Hoffa) found were sufficient to justify a trusteeship.  Clearly, they were.

### 3.  Local 293 Did Not Ask To Cross-Examine All The Witnesses

Plaintiff also contends that the hearing was not fair because the members of Local 293 did not have the opportunity to cross-examine certain individuals, including: the Trustee and those assisting him in presenting the case on behalf of the Trustee; individuals who had given deposition testimony in connection with the 2002 IRB investigation; the three individuals, Mr. Kloss, Ms. Asbury, and Ms. Knight, who provided affidavits that were introduced at the hearing; and certain individuals who did not testify, but provided information to witnesses who did testify.

Regarding Nowak, Markowitz and Richmond, the Trustee and the two IBT representatives who assisted him, Defendants argue that there was no stated prohibition against the Plaintiff or the members of Local 293 seeking to question them; they say Plaintiff simply never asked to do so.  Thus, because the Local 293 officers defending against the trusteeship never asked to cross-examine or ask questions of these individuals, Defendants argue that any lack of cross-examination of them was a result of Plaintiff's own strategy decisions during the hearing.  The Court agrees with Defendants.  Plaintiff cannot complain about the alleged defect now.  Local 293 was allowed to cross-examine some of the individuals who testified.  Given that Plaintiff was allowed to cross-examine any witness he sought to cross-examine, coupled with his failure to ask permission to cross-examine other witnesses, this Court determines that the hearing was fair in this respect.

In regard to the three witnesses who testified by affidavit, their statements were offered into

38

evidence and only objected to when prompted by the panel.  Nov. 29 Hearing Transcript at 55-57, 89-90.  A party would be hard-pressed to complain about the admission or consideration of evidence that was not objected to at the time it was offered.  This Court is not attempting to impose evidentiary standards upon the hearing, but Plaintiff should at least be charged with the obligation to bring defects that can easily be remedied to the attention of the panel.  A failure to object can be presumed a waiver.  Plaintiff cannot claim that he was prejudiced by not cross-examining these individuals without any attempt to exercise that right.  Furthermore, because the record reflects that at least one of these individuals was present at the hearing, Plaintiff could have called him as a witness.

The deposition testimony that Plaintiff now complains was improperly offered without the right of cross-examination included the depositions of Doug Smith and Plaintiff William Satink himself, both of whom were representing Local 293 at the trusteeship hearing.  Each could easily have testified in response to his proffered deposition testimony.  The other depositions included those of a former principal officer of Local 293, Jimmy Petrucci, and a former president of the Local, Jack Sideris.  Again, the Respondents at the hearing did not object to the introduction of the transcripts or seek to have the witnesses appear for in-person examination.  Furthermore, the depositions were taken by an attorney for the IRB with the Local 293 attorney, John Masters, present and fully able to cross-examine and otherwise probe the witnesses' testimony with a view to protecting the interests of the Local Union.  Accordingly, this Court determines that the introduction of this deposition testimony did not render the hearing unfair.

Plaintiff also submits that he and other Local 293 members had no opportunity to cross-examine individuals whose statements were relied on by witnesses who did testify at the trusteeship hearing.  As pointed out during the November 29, 2004, hearing, and as Plaintiff's counsel conceded, the rules of

39

evidence did not apply to the trusteeship hearing.  Nov. 29 Post-Notice Hearing Transcript at 38.  The Plaintiff and other Local 293 members did have the opportunity to cross-examine the witnesses who proffered the alleged hearsay testimony and had every opportunity to attempt through cross-examination to discredit or otherwise deal with the hearsay statements those witnesses relied upon. None of the Plaintiff's arguments about the introduction of testimony and other evidence at the hearing implicates any legitimate due process concerns or provides any grounds for overturning the results of that hearing.

### 4.    Local 293 Had Sufficient Time To Rebut Evidence Presented By The Trustee

Plaintiff argues that, during the six hour long presentation by the temporary trustee, Nowak offered fifty-five exhibits totaling roughly 1,700 pages.  Plaintiff further states that the half hour allotted by the panel for Local 293 to evaluate those documents was clearly insufficient.  Plaintiff argues that because members of Local 293 were not given an adequate time to review these documents and prepare a defense, the hearing was fundamentally unfair.  Defendants respond that most of the documents offered by the temporary trustee as exhibits were records that either came from Local 293's offices or that Local 293 drafted itself.  After reviewing all the documents submitted by the temporary trustee to the panel, this Court concludes that there were less than 25 pages (9 documents) that may not have been available to Local 293 prior to the hearing.[21]  This Court does not feel that a half hour break in which to review 25 pages is unreasonable when there was substantial discussion of all the documents during Nowak's testimony.  The remaining documents were either originally sent directly to Local 293, were copied to Local 293 on the transmission, or were drafted by Local 293 itself.  In other words, Local 293 had previous knowledge of the contents of most of these documents. Accordingly, Local 293 had ample time

---

[21] The Court concludes that Local 293 may not have been aware of the following documents before they were offered by Nowak to the panel: T36, T37, T47, T48, T50, and T52 - T55.

40

to familiarize itself with the contents of the documents, and therefore, the hearing was not unfair for this reason.

### 5. The Hearing Was Not A Sham

Last, Plaintiff contends that the entire hearing was a sham and merely served to rubberstamp Hoffa's predetermined decision to place Local 293 in a trusteeship. Because Hoffa's November 8, 2004 determination to maintain the trusteeship and the panel's recommendation to Hoffa only mentioned reasons why the trusteeship should be imposed and did not list any evidence negating these reasons, Plaintiff argues that the hearing was a sham.

There is no requirement that provides that either the panel's recommendation or the General President's determination list every piece of evidence, or even any exculpatory evidence on behalf of Local 293. The Court has, moreover, spent a substantial amount of time reviewing the transcript of the hearing. That analysis reveals that, while far from perfect, it was certainly not a sham. The panel not only allowed Local 293 to respond to the charges against it, but in some cases, invited responses that were not otherwise immediately forthcoming. Accordingly, the Court finds Plaintiff's argument that the hearing was a mere sham without merit.

### C. The Trusteeship Was Continued Based On A Valid Reason

Because the post-notice hearing ratified the imposition of the emergency trusteeship, the parties agree that the emergency trusteeship no longer exists. Nov. 29 Hearing Transcript at 28-29. The emergency trusteeship has been replaced by a traditional trusteeship. Moreover, because this Court has declared that the post-notice hearing was fair, this new trusteeship is "presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good

faith for a purpose allowable under § 462 of this title."  29 U.S.C. § 464 (c).  Accordingly, the November 8 decision must be presumed valid and Plaintiff can only overcome that presumption by demonstrating by <u>clear</u> <u>and</u> <u>convincing</u> evidence that Hoffa's decision to maintain the trusteeship of Local 293 was made in bad faith, or that the purpose for which the trusteeship was continued was not one authorized by Section 302 of the LMRDA.[22] *Morris*, 361 F.3d at 196- 97; *see also International Bhd. Of Teamsters v. Local 810*, 19 F.3d at 794; *Teamsters Local Union No. 406 v. Crane*, 848 F.2d at 714 ("Unless the union local can prove clearly and convincingly that the proffered reasons for establishing the trusteeship are pretextual, they [sic] must make a showing and introduce evidence of bad faith on the part of the international union.").  An international union's decision to impose a trusteeship must be upheld, moreover, if just a single reason for that action was valid – even if some other, improper, motive also may have existed. *See, e.g., Pape v. Local 390, Int'l Bhd. of Teamsters*, 315 F. Supp. at 1314; *Morris v. Hoffa*, 168 L.R.R.M. (BNA) 2581, 2587-88 (E.D. Penn. 2001); *Mason Tenders Dist. Council v. Laborer's Int'l Union*, 884 F. Supp. at 836.

This Court has already determined that any reason not stated in, or reasonably disclosed by, Hoffa's notice of the emergency trusteeship will not be considered by this Court because it would be fundamentally unfair to do so.  Accordingly, this Court will review the reasons disclosed in Hoffa's Notice of Trusteeship under the higher clear and convincing standard to determine whether the reasons

---

[22] As previously stated, if there is  "no substantial evidence which can be pointed to as justifying the decision of the union officials, then it is not likely that the imposition of the trusteeship was in good faith." *See Teamsters Local Union No. 406 v. Crane*, 848 F.2d 712-713.

were pretextual or for a purpose not allowable under the LMRDA.[23]

       1.      <u>The Reasons Cited By Hoffa Were Neither Pre-text Nor For An Improper Purpose Under The LMRDA</u>

At the November 29, 2004 hearing, Plaintiff conceded that there is no evidence to support his early allegation that Hoffa's decision to place Local 293 in trusteeship was motivated by political or personal aspirations. Nov. 29 Hearing Transcript at 28-29. Rather, Plaintiff argued that the IBT acted in bad faith by seeking to support Local 348's position vis-a-vis the House of LaRose, to the detriment of Local 293. As discussed at length above, when the Court concluded that a TRO was appropriate, the Court determined that Plaintiff had established - then by a preponderance of the evidence - that there was either no substantial evidence to support the grounds cited in support of the emergency trusteeship or that the cited reasons were not proper purposes within the meaning of the LMRDA.

One of the reasons for imposing the trusteeship, which did appear in the pre-hearing notice, was that Local 293 deliberately failed to submit its contract with the House of LaRose to Joint Council No. 41 for its approval. Plaintiff asserts that there is "absolutely NO evidence in the Hearing Transcript which supports this conclusion. To the contrary, Smith and Satink testified at the hearing that they were not aware of this requirement." Plaintiff's Brief in Opp. at 47. Article XII, Section 7 of the IBT Constitution, entitled "Wage Scales and Approval Thereof" reads as follows:

> "Two (2) copies of proposed collective bargaining agreements with a company in an industry in which there is an area standard established by pre-existing agreements, or

---

[23] It is arguable that, under *Crane*, this Court should not be so stringent in its review of Hoffa's trusteeship decision. In other words, a fair reading of *Crane* could require a consideration of all factors upon which Hoffa relied, despite the unfairness involved in the hearing regarding those factors, as long as the Court employed a preponderance standard to Plaintiff's attack on those standards. Because the Court concludes that one of the noticed factors was sufficient to support the trusteeship, however, the Court need not engage in this alternative analysis or decide whether it should allow a jury to do so.

> amendments thereto, shall be submitted to the Joint Council
> for approval before submission to the employer. The Joint
> Council may also direct any affiliate to submit two (2) copies
> of any proposed collective bargaining agreement for review,
> under such condition as the Joint Council determines.

Plaintiff argues that because Hoffa and Nowak admit that no area standard for labor contracts exists, there can be no violation of this requirement; essentially, Plaintiff argues this requirement is illusory. The Court agrees that the lack of an area standard negates any requirement to submit collective bargaining agreements to the Joint Council under the first sentence of this provision.

The Defendants, however, rely on the <u>second</u> sentence of the excerpt above.   The requirement for an "area standard" is a limitation only on the first sentence of Article XII, Section 7 of the IBT Constitution, it does not limit the other conditional notice obligation in that document. That conditional notice obligation was satisfied on January 11, 2002 when Joint Council No. 41 President Roger Hunt wrote a letter to all Local Unions under the jurisdiction of Joint Council No. 41 requiring approval of all new collective bargaining agreements.  Def. Ex. R, page 142.

Defendants further rely on Article XII, Section 2 (c) of the IBT Constitution, that reads:

> In the event any Local Union, Trade Conference or
> Division, or Committee negotiates an agreement which
> involves, affects, or relates to operations of the
> employer or employers within the jurisdiction of other
> Local Unions, Trade Conferences or Divisions, or
> Committees, notice of intent to execute such agreement
> shall be given to the Trade Conferences or Divisions,
> Committees, or Local Unions involved in such other
> jurisdiction, who may, within ten (10) days thereafter,
> protest the application of such agreement in their area.

Because Local 293's 2002 agreement with House of LaRose – particularly the "single-location addendum" that expressly contemplated a consolidation of the House of LaRose's Akron operations to

44

a new facility in Cuyahoga County – clearly "involved, affected and related" to the Akron operations within the jurisdiction of Local 348, the IBT Constitution also required notification from Local 293 officers to officers of Local 348 regarding the House of LaRose agreements.  Accordingly, there were two separate notices to Local 293 that it was required to submit proposed collective bargaining agreements to Joint Council No. 41 for its approval and to Local 348 for possible objection. Plaintiff's argument that such notification was not required is contrary to both the express language of the IBT Constitution and the letter from Joint Council No. 41 President Roger Hunt. The fact that Satink and Smith claimed to be unaware of this obligation is no excuse, given the undisputed written notices to Local 293 of this obligation.

Prior to the Court's November 9, 2004 Order granting Plaintiff's motion for a TRO, the Court was not made aware of either the January 11, 2002 letter from Joint Council President Hunt, or of Article XII, Section 2(c) of the IBT Constitution that obligated Local 293 to submit proposed collective bargaining proposals to Joint Council No. 41 and other interested parties prior to execution.  Rather, the Court only heard testimony from Satink and Smith that they did not recall receiving such notice, or were aware of this obligation.  At that stage, when the Plaintiff was only required to show an improper purpose or bad faith by a preponderance of the evidence, the absence of this additional evidence was meaningful.  Under that lower threshold - and without this compelling evidence - this Court relied solely

45

on testimonial evidence.[24]  Now, after reviewing this additional evidence under the stricter "clear and convincing" standard, this Court determines that Local 293's failure to submit its proposed collective bargaining agreement with House of LaRose to Joint Council No. 41 and other interested locals constituted violation of the IBT Constitution and other validly established union procedures.  Those rules dictate the "duties of a bargaining representative" and are otherwise important to the IBT's efforts to "carry out the legitimate objectives of [that] labor organization" - including the need to assure that collective bargaining agreements do not impede unduly on the rights of other locals or divisions.  The need to assure that these rules are followed, and to deter locals from violating them in the future is, thus, a proper purpose for authorizing imposition of a trusteeship under Section 302 of the LMRDA.[25]  Because a trusteeship is valid once the parent union establishes even *one* proper purpose for the imposition of the trusteeship, this Court need not address the remaining reasons cited by Hoffa under the stricter burden of proof.  *Morris*, 361 F.3d at 188.

## V.    CONCLUSION

The Court finds that the IBT did impose the trusteeship in accordance with the procedures set forth in its Constitution.  Moreover, the Court determines that the post-notice hearing was fair.  Because

---

[24] As noted earlier, Local 293's obligation to provide Joint Council No. 41 a copy of its collective bargaining agreement prior to approval appears in two separate places: Art. XII, § 2 and in a letter dated January 11, 2002 from Joint Council No. 41 President Roger Hunt.  As of the date of this order, Art. XII, § 2 has never been introduced as an exhibit.  Rather, the Court was introduced to this language for the first time in Defendants' Reply Brief that was submitted on December 21, 2004, long after the TRO had granted.  As far as the letter from Roger Hunt, it appears that Defendants did submit this document during the first oral hearing.  The Defendants, however, submitted this document as one of among hundreds of pages of a bulk exhibit and never referred to this individual document, or any other document, during the cross-examinations of Smith or Satink, or at any other time during any hearing, prior to the Court's issuance of the TRO.

[25] A trial court, in deciding whether to grant permanent injunctive relief, is not bound by its earlier preliminary decision.  *See Morris*, 361 F.3d at 189.

the Plaintiff failed to show by clear and convincing evidence that all of the reasons for the imposition of the trusteeship were made in bad faith or were improper, the Court determines that the trusteeship is proper. The Court does not reach this conclusion lightly. As noted, the Court remains convinced that the IBT had no basis to impose an emergency trusteeship upon Local 293. In addition, while the Court ultimately concludes that the post-notice hearing was neither procedurally irregular nor substantially unfair, it was certainly not perfect and could have been conducted in a less rushed and more professional manner. Finally, the Court remains of the view that preventing local members from, or punishing them for, crossing a picket line would never be a proper purpose for imposition of a trusteeship. Given the extremely high burden Plaintiff must satisfy at this stage of the proceedings, however, and the substantial (indeed almost slavish) deference this Court is required to accord internal union processes and decisions, the Court concludes that the statutory presumption of validity must attach to Hoffa's November 9, 2004 decision to continue the trusteeship over this Local.

Accordingly, the trusteeship must be presumed valid for 18 months from the date it takes affect. As such, Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment is **DENIED**. Because granting of Defendants' Motion terminates the injunctive relief previously entered by this Court, Defendants' Motion to Stay the TRO and Motion for Modification or Amendment of the same TRO are **DENIED** as moot. Accordingly, this action is **DISMISSED**. Given the importance of the issues raised, however, the Court will stay the effect of this order for sixty (60) days to give Plaintiff an opportunity to file a notice of Appeal and, if appropriate, seek an order from the Court of Appeals for a further stay.

47

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:** August 22, 2005